UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MAXWELL AND BETTY BILLIOT | * | NO. |
| VERSUS | * | JUDGE |
| SUNLAND CONSTRUCTION, INC. | * | MAGISTRATE |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

NOW INTO COURT, through undersigned counsel, come the plaintiffs, Maxwell and Betty Billiot, who assert the following Complaint for Damages against Sunland Construction, Inc. pursuant to the Jones Act, 46 U.S.C. § 30104 and the general maritime law.

I.

Maxwell Billiot and his wife, Betty Billiot, are both persons of the full age of majority and residents of Bay St. Louis, Mississippi.

II.

Named as the defendant in this matter is Sunland Construction, Inc., (hereinafter "Sunland" or "Sunland Construction") which upon information and belief is a Louisiana corporation which is domiciled in Eunice, Louisiana, but which at all times pertinent to this litigation was doing business within the jurisdiction of this Court.

III.

At all times pertinent to this case, Maxwell Billiot was an employee of Sunland Construction's Maritime Division, which is headquartered in and he was based and supervised out of Sunland's Belle Chasse, Louisiana office.

1

IV.

The jurisdiction of this Court is asserted pursuant to, 28 U.S. C. § 1333, 46 U.S.C.A. 30104, the Jones Act and the General Maritime Law.

V.

Venue is proper in this district because the defendant was and is doing business here on a regular basis and the actions and negligence upon which this Complaint is based occurred within this District.

VI.

At all times pertinent hereto, Maxwell Billiot was employed by Sunland Construction's Marine Division primarily in the pipe laying and/or repair business as a heavy equipment operator, working and living aboard barges and other vessels on the navigable waters within the jurisdiction of this Court.

VII.

Maxwell Billiot has been employed full time by Sunland Construction in this capacity for approximately 6 years. During that time he has primarily worked aboard, lived upon and was permanently assigned to Sunland's company-owned fleet of crane barges, which are designated as Sunland barges 100, 101, 102 and/or 103, and which constitute an identifiable fleet of vessels operating under Sunland's control. At all times during his employment with Sunland, Maxwell Billiot was not only assigned to one of these four barges, but would also live in the living quarters constructed on these barges and work either on or from these four barges.

VIII.

Sunland Construction owned and operated these four barges at all times pertinent to this case.

IX.

At all times pertinent to this case, and throughout his employment with Sunland Construction, Maxwell Billiot was a Jones Act Seaman working and living aboard the four barges owned and operated by his employer, Sunland Construction, which were all vessels in navigation. Maxwell Billiot's work activities as a heavy equipment operator, included in large part operating the 120 ton cranes that were permanently affixed aboard these barges, contributed to the mission of the crane barges primarily in pipeline laying and/or repair work.

X.

During his employment with Sunland Construction, Maxwell Billiot would be assigned to a barge and would work for the duration of the particular job to which he was assigned, which frequently entailed 12 hour work days, 6-7 days per week. Upon the conclusion of each day's work activities, Maxwell Billiot would return to the living quarters of whichever barge he was assigned at that particular time where he would eat, bathe, and sleep during his off hours, as did the rest of the Sunland crew with whom he worked.

XI.

At all times pertinent hereto and specifically in November 2015 and on July 18, 2016 when Maxwell Billiot was injured while working in the course and scope of his employment with Sunland Construction, Inc., the barges to which he was assigned and his work activities took place on navigable waters within the jurisdiction of this Court.

XII.

Maxwell Billiot's job duties required him to perform multiple activities aboard Barges 101, 102, 103 and 104, which tasks contributed to the function and mission of those vessels. As such Maxwell Billiot was a Jones Act Seaman at all times pertinent, including the time of his accidents.

XIII.

In November 2015, the exact date of which is currently unknown to the plaintiff, Maxwell Billiot was working for Sunland Construction on a canal just off of Highway 90 in Boutte, Louisiana. As part of the job duties to which Sunland assigned Mr. Billiot, he was required to operate amphibious marsh buggies through the canals in order to access and work upon pipelines laid in the area of the canal.

XIV.

The job referenced above in November 2015 was being performed by Sunland Construction for Shell Oil, as they were repairing an oil pipeline in a pond along the canal. Maxwell Billiot was directed to go aboard one of the marsh excavator buggies to maneuver it into the pond to continue working on the pipeline.

XV.

Given the conditions, Maxell Billiot was required to traverse muddy and wet terrain to reach the marsh buggy to which he had been assigned. As he was attempting to climb up a narrow ladder on the marsh buggy to get to the control cab, his foot slipped on mud, oil or other foreign substances that were on the ladder resulting in his falling and hurting his low back.

XVI.

The Sunland foreman who was present on the job was required to assist Maxwell Billiot into the buggy so that he could continue with his job that day and then subsequently help Mr. Billiot out of it because of the severe pain he was having in his lower back.

XVII.

Maxwell Billiot was taken to Ochsner Hospital where he came under the care of an orthopedic surgeon, Dr. Sarah Friedberg, who performed a series of tests, including CT scans and ultimately diagnosed Maxwell Billiot with a bulging disc in his low back, as well as other injuries from this work related accident.

XVIII.

Dr. Friedberg indicated that Maxwell Billiot should not return to work until he received further medical care, including epidural steroid injections; however, representatives of Sunland Construction prevailed upon Dr. Friedberg to release Mr. Billiot to return to work based upon false representations that his work activities would be extremely limited to simply operating the controls of the barge cranes, as he was needed to complete this job for Sunland's customer.

XIX.

As part of his job duties upon his return to the barge, despite his supervisor having told the orthopedic surgeon that he would only be required to operate hand controls of the crane, Maxwell Billiot was required to perform strenuous work activities, including pulling a 50 pound skid on the barge, which further aggravated his low back injury.

XX.

Maxwell Billiot subsequently received additional medical care, including epidural steroid injections, but he continues to have problems with his low back; however, Sunland has now denied

any responsibility for Mr. Billiot's continued medical care and/or any benefits and have affirmatively stated that they have no responsibility for such because no accident report was prepared, despite the fact that they were fully aware of his accident and injury and that the preparation of the accident report was not Mr. Billiot's responsibility, and his accident and injuries are well documented.

XXI.

Accordingly, Sunland Construction has willfully and wantonly violated their statutory duty to pay Maxwell Billiot maintenance and cure benefits from this injury to his low back in November 2015.

XXII.

Despite the injuries he sustained as referenced above, Maxwell Billiot returned to work with Sunland Construction and continued to attempt to perform his job duties. However, on July 18, 2016 Mr. Billiot was working on a Kinder Morgan pipeline job for Sunland Construction. More particularly, he was assigned to work aboard one of the four Sunland barges referenced above, which is believed to have been Barge 101. Mr. Billiot had taken a crew boat to the barge and, while in the process of attempting to board the barge upon which a large crane was permanently mounted, he tripped and fell over an improperly and poorly marked piece of equipment in a poorly maintained area of the barge.

XXIII.

As a result of that fall, Maxwell Billiot severely injured his left leg, sustaining a gash on his left shin, an injury to his knee, and an aggravation of his back injury described above.

XXIV.

Maxwell Billiot was immediately attended to by both the Sunland foreman, DJ, as well as the onboard medic, Mr. Lance. Ultimately it was decided that Mr. Billiot needed more significant medical treatment and he was evacuated from the barge and taken to Bourgeois Clinic in Morgan City, Louisiana, where he was diagnosed with both left leg and knee injuries.

XXV.

Based upon his assessment of Mr. Billiot's leg and condition, Dr. Bourgeois was of the opinion that in addition to the problems for which he was treating Mr. Billiot that Mr. Billiot needed evaluation and release by a cardiologist because of preexisting heart problems before Mr. Billiot could be released to return to work. Accordingly, Mr. Billiot was examined and approved for return to work by his cardiologist; however, Dr. Bourgeois refused to release Mr. Billiot to return to work with Sunland Construction until he was able to complete a 9 minute treadmill test. However, because of the injuries to his left leg described above, Mr. Billiot was unable to and still remains unable to complete 9 minutes of treadmill testing.

XXVI.

As of this time, Sunland Construction has refused to pay for any of the medical expenses for Mr. Billiot's injuries to his left leg and/or the aggravation of his low back injury. Instead, Sunland Construction's representatives have told him that he should put those medical charges through his personal health insurance.

XXVII.

Sunland Construction, Inc. has further willfully and wantonly refused to pay Maxwell Billiot any maintenance or cure benefits since his injury on July 18, 2016, despite his not having been able to work since that time.

XXVIII.

The egregious actions by Sunland Construction in refusing to allow Maxwell Billiot to return to work until such time as he can complete a treadmill test, which he is not able to do because of the injuries he sustained on their jobs, and their ongoing refusal to pay him any benefits, Maxwell Billiot has been placed in necessitous financial circumstances, resulting in him losing personal property and having exhausted all of his savings.

XXIX.

Even more egregious, Sunland's refusal to pay maintenance and cure benefits and/or to return Mr. Billiot to work has resulted in his being advised by Sunland that they have terminated his company provided health insurance and his only alternative is to select COBRA, which he cannot afford because of his lack of income. Unfortunately, Mr. Billiot's wife, Betty, is a dialysis patient and relied upon their health insurance, which Maxwell Billiot had received through Sunland Construction, Inc. to pay for her treatment. Accordingly, Sunland Construction's actions have directly led to the termination of the coverage for her dialysis treatment which will shortly create a life threatening situation for Mrs. Billiot. These actions by Sunland have been intentional and purposeful, and have directly injured Mrs. Billiot as well as her husband.

XXX.

The accidents that Maxwell Billiot sustained in November 2015 and on July 18, 2016 were caused by Sunland's negligence and/or its failure to provide Maxwell Billiot with a safe place to work, as the conditions into which he was placed by Sunland were unsafe and unseaworthy, thus creating a hazardous and dangerous place for Mr. Billiot to work. These actions by Sunland Construction and their representatives have caused severe and significant injuries to Mr. Billiot and soon will be causing a life threatening situation for his wife, Betty Billiot.

XXXI.

Maxwell Billiot specifically asserts that his injuries were caused in whole or in part by the unseaworthiness of the vessel (believed to be Sunland 101) upon which he was working when he tripped and fell in July 2016 and the unsafe and dangerous work environment and equipment with which he was provided to work in November 2015. Accordingly, Sunland Construction is liable for their own negligence and unseaworthiness of their vessels, which consisted but was not limited to the following:

a. Failing to have necessary equipment and crew to perform the necessary work aboard the vessels.

b. Failure to have proper equipment for accessing the marsh buggies and the barge.

c. Failure to have a safe and properly marked work area upon which to board the barge on July 18, 2016.

d. Failure to have properly trained crew with which Maxwell Billiot could work.

e. Failure to have properly trained supervisors

f. Any and all other acts of negligence or unseaworthiness which will be shown at the trial of this matter.

XXXII.

Maxwell Billiot alleges that his injuries were caused with no contributory negligence on his part and as a result of the sole negligence of the defendant, Sunland Construction, which negligence consisted of, but was not limited to the following:

a. Failing to meet the standard of care owed to a seaman by his employer under the General Maritime Law and the Jones Act.

b. Failing to provide a safe place to work

c. Failing to provide necessary equipment and crew to perform the work upon the vessels

    d. Willful and wanton failure to provide proper medical treatment and by coercing and/or misleading the health care providers of Maxwell Billiot into returning him to work under false pretenses.

    e. Failing to properly train the crew

    f. Failing to provide proper equipment for accessing barges and marsh buggies

    g. Failing to properly keep neat and clean, mark, paint or otherwise identify work areas into which Maxwell Billiot was placed

    h. Failing to properly supervise the crews

    i. Intentionally misleading Maxwell Billiot's medical providers regarding the nature of his work

    j. Any and all other acts of negligence which will be shown at the trial of this matter.

### XXXIII.

Maxwell Billiot asserts that he has not yet reached maximum medical improvement and at all times pertinent to this accident he was entitled to the benefits of maintenance and cure, which have been willfully and wantonly denied without sufficient cause by Sunland Construction, Inc. since his first injury in November 2015.

### XXXIV.

As a result of his injuries, Maxwell Billiot has been unable to continue working in his job as a heavy equipment operator and is in need of further ongoing medical attention.

### XXXV.

Maxell Billiot asserts that Sunland Construction is liable to him for all medical expenses associated with his injuries.

XXXVI.

As a result of the accidents and omissions set forth in his Complaint, Sunland Construction, Inc. is liable to Maxwell Billiot and his wife for all damages as are reasonable in the premises, including but not limited to:

a. Past, present and future pain, suffering, mental anguish and stress

b. Past, present and future medical expenses for the treatment of injuries

c. Past and future lost wages

d. Loss of earning capacity

e. Loss of enjoyment of life

f. 'Double wage' penalties under 46 U.S.C. § 10504(c)

g. Punitive Damages

h. Any and all other damages to which Mr. and Mrs. Billiot have sustained

XXXVII.

Maxwell and Betty Billiot specifically request a trial by jury on all issues to which they are entitled to such.

WHEREFORE, Betty and Maxwell Billiot pray that the defendant, Sunland Construction, Inc., be cited and served with a copy of this Complaint and be required to answer in accordance with the law, and that after due proceedings are had that there be a judgment in their favor and against Sunland Construction, Inc. for all of their damages such as are reasonable in the premises, together with legal interest from the date of judicial demand until paid and for all costs of these proceedings. Betty and Maxwell Billiot further pray for all general and equitable relief to which they are entitled in this matter.

Respectfully submitted,

NALLEY AND DEW
A Professional Law Corporation

_____
GEORGE J. NALLEY, JR.            (9883)
ANDREW J. MINER                  (34682)
Suite 100
2450 Severn Avenue
Metairie, LA  70001
(504) 838-8188
Attorney for Betty and Maxwell Billiot

12